## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF MISSISSIPPI

### IN RE: TWYLA DIANNE G. TAYLOR                    Case No. 20-12621

### CREDITOR'S, NORTHEAST MISSISSIPPI
### PLANNING AND DEVELOPMENT DISTRICT, MOTION
### FOR ABANDONMENT AND RELIEF FROM
### AUTOMATIC STAY AND CO-DEBTOR STAY

**COMES NOW**, the Creditor, Northeast Mississippi Planning and Development District,

by and through its attorney of record, and files this its Motion for Abandonment and Relief from

Automatic Stay, and in support thereof, would respectfully show unto this Honorable Court, as

follows:

### (1)

Creditor would show that the Debtor, Diane Taylor, was at all times relevant to this

Motion, the owner of a business in Potts Camp, Mississippi known as "Professional Services"

that provided title abstracting and loan closing services to the public. The business also shared

office space and had a contractual relationship with an attorney, Jennifer Shackelford, the

specific details of which are not known.

### (2)

Creditor would show that on or about December 12, 2016, two separate loans were issued

to the Debtor, individually and as the sole and only shareholder of Professional Services of Potts

Camp, Inc. (Hereinafter "Professional Services"), in the principal amount of $162,500.00 each.

A copy of said Notes is attached hereto as Exhibit "A" and made a part hereof as if copied fully

herein in words and figures.

### (3)

Creditor would further show that to secure said loans, the Debtor executed two deeds of

trust granting the Creditor a security interest in several tracts of real property. A copy of said

deeds of trust are attached hereto as Exhibit "B" and made a part hereof as if copied fully herein

in words and figures.

**(4)**

That as part of its due diligence, the Creditor obtained two Certificates of Title from

Jennifer L. Shackelford, Attorney at Law indicating that the properties securing the loan were

free and clear of any liens or encumbrances. The Certificates of Title further confirmed that the

Creditor would possess a first and second lien position on the subject property after the closing

was finalized and the deeds of trust were executed and properly recorded. A copy of said

Certificates of Title are attached hereto as Exhibit "C" and made a part hereof as if copied fully

herein in words and figures.

**(5)**

That after the Debtor defaulted on said notes, the Creditor began foreclosure proceedings

and discovered that it, in fact, did not possess a first lien on the subject property. Instead, the

Creditor learned that the subject properties were encumbered by liens from other banks that were

ahead of the Creditor's lien.

**(6)**

After the Creditor learned that the Certificate of Title issued by Attorney Jennifer

Shackelford failed to acknowledge the existence of the prior liens, the Creditor put Shackelford

on notice of the potential malpractice and its intent to pursue a claim against her professional

errors and omissions insurance policy. Further, Creditor was informed that Shackelford denies

that she executed said certificates of title and further denies that anyone acting with her authority

provided said certificates of title.

(7)

Creditor believes that a more in-depth investigation is necessary to determine which causes of action exist. At a minimum, the Creditor desires to pursue claims against any applicable errors and omissions coverage for the Debtor or Attorney Shackelford. The Creditor also desires to investigate whether the Debtor participated in a fraud that might affect dischargeability.

(8)

Creditor would submit that the it should be allowed to proceed with any potential claim to recover the funds that were loaned to Debtor and Professional Services.

(9)

That the automatic stay should be lifted to the extent necessary for the Creditor to pursue its claim against Shackelford and her professional liability insurance in addition to any other insurance coverage that might satisfy claims against the Debtor.

**WHEREFORE, Premises Considered**, Creditor, Northeast Mississippi Planning and Development District, prays that the Bankruptcy Court will enter an Order granting relief from the automatic stay, to the extent necessary, for Creditor to continue to pursue its claim against Jennifer L. Shackelford, Attorney at Law and any professional liability insurance coverage that may be available along with the Debtor's insurance coverage that might be available to satisfy the Creditor's claims.

3

**RESPECTFULLY SUBMITTED, this the 22nd day of October, 2020.**

**Northeast Mississippi Planning and
Development District, Creditor**

AKINS & ADAMS, P. A.

By:/s/ Bart M. Adams
       Bart M. Adams
       Attorney for NEMPDD

AKINS & ADAMS, P. A.
108 E. JEFFERSON STREET
RIPLEY, MISSISSIPPI 38663
(662) 837-9976

## CERTIFICATE OF SERVICE

I, Bart M. Adams, attorney of record for the Creditor, do hereby certify that the following parties, being registered with the CM/ECF system, have this day received electronic notification to:

William L. Fava, Esq.       wfave@favafirm.com

U. S Trustee       USTPRegion05.AB.ECF@usdoj.gov

Tiffany K. Pharr, Esq.       court@denvilcrowe.com

SO, CERTIFIED, this, the 22nd day of October, 2020.

/s/ Bart M. Adams
Bart M. Adams
Attorney for Creditor

4

<u>NOTE</u>

$162,500.00

Booneville, MS
December 12, 2016

FOR VALUE RECEIVED, the undersigned ("Borrower") promise(s) to pay NORTHEAST MISSISSIPPI PLANNING AND DEVELOPMENT DISTRICT, or order, the principal sum of ONE HUNDRED SIXTY TWO THOUSAND FIVE HUNDRED and No/l00 ($162,500.00) DOLLARS, with interest on the unpaid principal balance from the date of this note, until paid, at the rate of 5% per annum for 180 monthly payments. Principal and interest shall be payable at P. O. Box 600, Booneville, Mississippi, or such other place as the Note holder may designate, in consecutive monthly installments of $1,285.00 commencing on the 1st day of each month beginning the 1st day of February, 2017. Such monthly installments shall continue until the entire indebtedness evidenced by this Note is fully paid, except that any remaining indebtedness, if not sooner paid, shall be due and payable on the 1st day of January, 2032.

If any monthly installments under this Note is not paid when due and remains unpaid after a date specified by a notice to Borrower, the entire principal amount outstanding and accrued interest thereon shall at once become due and payable at the option of the Note holder. The date specified shall not be less than thirty (30) days from the date such notice is mailed. The Note holder may exercise this option to accelerate during any default by Borrower regardless of any prior forbearance. If suit is brought to collect this Note, the Note holder shall be entitled to collect all reasonable costs and expenses of suit, including, but not limited to, reasonable attorney's fees.

Borrower shall pay to the Note holder a late charge of 4% four percent of any monthly installments not received by the Note holder with in 15 (fifteen) days after the installment is due.

Borrower may prepay the principal amount outstanding in whole or in part. The Note holder may require that any partial prepayments (I) be made on the date monthly installments are due and (ii) be in the amount of that part of one or more monthly installments which would be applicable to principal. Any partial prepayment shall be applied against the principal amount outstanding and shall not postpone the due date of any subsequent monthly installments or change the amount of such installments, unless the Note holder shall otherwise agree in writing.

Presentment, notice of dishonor, and protest are hereby waived by all makers, sureties, guarantors and endorsers hereof. This Note shall be the joint and several obligation of all makers, sureties, guarantors and endorsers, and shall be binding upon them and their successors and assignees.

Any notice to Borrower provided for in this Note shall be given by mailing such notice by certified mail addressed to Borrower at the Property Address stated below, or to such other address as Borrower may designate by notice to the Note holder. Any notice to the Note holder shall be given by mailing such notice by certified mail, return receipt requested, or to the Note holder at the address stated in the first paragraph of this Note, or at such other address as may have been designated by notice to Borrower.

The indebtedness evidenced by this Note is secured by a Deed of Trust, dated December 12, 2016, and reference is made to the Deed of Trust for rights as to acceleration of the indebtedness evidenced by this Note.

PROFESSIONAL SERVICES OF POTTS CAMP, INC.
A MISSISSIPPI CORPORATION

BY:    _Diane G. Taylor_ _____
DIANE G. TAYLOR, PRESIDENT

STATE OF MISSISSIPPI

COUNTY OF TIPPAH

PERSONALLY appeared before me, the undersigned authority in and for the County and State, on this the 12th day of December, 2016, within my jurisdiction, the within named, **DIANE G. TAYLOR,** who acknowledged to me that she is the President of **PROFESSIONAL SERVICES OF POTTS CAMP, INC., A Mississippi Corporation,** and that for and on behalf of said corporation and as the act and deed of said corporation, she executed the above and foregoing instrument, after first having been duly authorized by said corporation so to do.

_Dawn G. Vance_ _____
NOTARY PUBLIC

(SEAL)

STATE OF MISSISSIPPI
DAWN G. VANCE
ID No
101612
NOTARY PUBLIC
Comm Expires
March 8, 2020
TIPPAH COUNTY

**COPY**

## NOTE

$162,500.00

Booneville, MS
December 12, 2016

FOR VALUE RECEIVED, the undersigned ("Borrower") promise(s) to pay NORTHEAST MISSISSIPPI PLANNING AND DEVELOPMENT DISTRICT, or order, the principal sum of ONE HUNDRED SIXTY TWO THOUSAND FIVE HUNDRED and No/l00 ($162,500.00) DOLLARS, with interest on the unpaid principal balance from the date of this note, until paid, at the rate of 5% per annum for 180 monthly payments. Principal and interest shall be payable at P. O. Box 600, Booneville, Mississippi, or such other place as the Note holder may designate, in consecutive monthly installments of $1,285.00 commencing on the 1st day of each month beginning the 1st day of February, 2017. Such monthly installments shall continue until the entire indebtedness evidenced by this Note is fully paid, except that any remaining indebtedness, if not sooner paid, shall be due and payable on the 1st day of January, 2032.

If any monthly installments under this Note is not paid when due and remains unpaid after a date specified by a notice to Borrower, the entire principal amount outstanding and accrued interest thereon shall at once become due and payable at the option of the Note holder. The date specified shall not be less than thirty (30) days from the date such notice is mailed. The Note holder may exercise this option to accelerate during any default by Borrower regardless of any prior forbearance. If suit is brought to collect this Note, the Note holder shall be entitled to collect all reasonable costs and expenses of suit, including, but not limited to, reasonable attorney's fees.

Borrower shall pay to the Note holder a late charge of 4% four percent of any monthly installments not received by the Note holder with in 15 (fifteen) days after the installment is due.

Borrower may prepay the principal amount outstanding in whole or in part. The Note holder may require that any partial prepayments (I) be made on the date monthly installments are due and (ii) be in the amount of that part of one or more monthly installments which would be applicable to principal. Any partial prepayment shall be applied against the principal amount outstanding and shall not postpone the due date of any subsequent monthly installments or change the amount of such installments, unless the Note holder shall otherwise agree in writing.

Presentment, notice of dishonor, and protest are hereby waived by all makers, sureties, guarantors and endorsers hereof. This Note shall be the joint and several obligation of all makers, sureties, guarantors and endorsers, and shall be binding upon them and their successors and assignees.

Any notice to Borrower provided for in this Note shall be given by mailing such notice by certified mail addressed to Borrower at the Property Address stated below, or to such other address as Borrower may designate by notice to the Note holder. Any notice to the Note holder shall be given by mailing such notice by certified mail, return receipt requested, or to the Note holder at the address stated in the first paragraph of this Note, or at such other address as may have been designated by notice to Borrower.

The indebtedness evidenced by this Note is secured by a Deed of Trust, dated December 12, 2016, and reference is made to the Deed of Trust for rights as to acceleration of the indebtedness evidenced by this Note.

PROFESSIONAL SERVICES OF POTTS CAMP, INC.
A MISSISSIPPI CORPORATION

BY: ___DIANE G. TAYLOR, PRESIDENT___

STATE OF MISSISSIPPI

COUNTY OF TIPPAH

PERSONALLY appeared before me, the undersigned authority in and for the County and State, on this the 12th day of December, 2016, within my jurisdiction, the within named, **DIANE G. TAYLOR,** who acknowledged to me that she is the President of **PROFESSIONAL SERVICES OF POTTS CAMP, INC., A Mississippi Corporation,** and that for and on behalf of said corporation and as the act and deed of said corporation, she executed the above and foregoing instrument, after first having been duly authorized by said corporation so to do.

___NOTARY PUBLIC___

(SEAL)

STATE OF MISSISSIPPI
DAWN G. VANCE
ID No
101612
NOTARY PUBLIC
Comm Expires
March 8, 2020
TIPPAH COUNTY



**Instrument 2016004770**
Filed/Recorded 12/20/2016 01:59 P
15 Pages Recorded
Chuck Thomas, Chancery Clerk
Marshall County Mississippi

STATE OF MS
COUNTY OF MARSHALL
FILED/RECORDED

2016 DEC 20 PM 1:59

Benton County, Mississippi
Filed and Recorded
DECEMBER 29 2016
Inst. 201601290 Book 0744 Page
Marlene McKenzie, Chancery Clerk

Prepared by & Return to:
Professional Services of Potts Camp, Inc.
40 Homan Drive/ P.O. Box 130
Potts Camp, Mississippi 38659

*Not For Publication
Return to Professional Services*

Address of Grantor/Borrower(s):

Professional Services of Potts Camp, Inc.
P O Box 130
Potts Camp, MS 38659
662-333-9009

Address of Grantee/Lender:

Northeast Mississippi Planning & Development District
619 E. Park Drive, P. O. Box 600
Booneville, MS 38829
662-728-7038

INDEXING:  Marshall County, MS: 0.748 @ NW-1/4 of Section 16, Township 5 South, Range 1 West.

Benton County:  Tract in NW-1/4 Section 3, Township 3 South, Range 1 East And Pt of Block 14, Town of Ashland

## DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on this 12th day of December, 2016.

The Grantor is PROFESSIONAL SERVICES OF POTTS CAMP, INC., AND DIANE G. TAYLOR, ( hereinafter "Borrower(s)").

The trustee is Fred C. Permenter, Jr..

The beneficiary is NORTHEAST MISSISSIPPI PLANNING & DEVELOPMENT DISTRICT, whose address is 619 E. Park Drive, Booneville, MS 38829, 662-728-7038 (hereinafter "Lender").

This Deed of Trust secures a Promissory Note executed by PROFESSIONAL SERVICES OF POTTS CAMP, INC. to the Lender the principal sum ONE HUNDRED SIXTY TWO THOUSAND FIVE HUNDRED AND N0/100 DOLLARS, ($162,500.00) as with interest and terms set forth in the promissory note of even date; also all renewals, modifications, or extensions thereof, and also such further sums as may be advanced or loaned by Lender to the Borrower(s), and its successors, assigns,

Page 1 of 15

Exhibit "B"

together with interest thereon at such rate as shall be agreed upon. This debt is evidenced by Borrower's note ("Note"), dated the same date as this Security Instrument, which provides for monthly payments, with the full debt, if not paid earlier, due and payable on January 1, 2032.

This Security Instrument secures to the Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions, and modifications of the Note; (b) the payment of all other sums, with interest advanced under paragraph 3 to protect the security of this Security Instrument; and (c) the performance of Borrower(s)' covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower(s) irrevocably grant, bargain, sell, and convey to Trustee, in trust, with power of sale the of the following described property in Marshall County, Mississippi, and Benton County, Mississippi, to-wit:

**See Legal Description attached hereto as Exhibit "A".**

Together with all improvements, hereditaments, and appurtenances now or hereafter erected on, and all fixtures of any and every description now or hereafter attached to said land (all being referred to as the "Property").

Borrower(s) COVENANT that Borrower(s) are lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrowers warrant and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower(s) and Lender covenant and agree as follows:

1. *Payment of Principal and Interest; Prepayment and Late Charges.* Borrowers shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. *Application of Payments.* Unless applicable law provides otherwise, all payments received by Lender under paragraph 1 shall be applied: first, to any prepayment charges due under the Note; second, to interest due; third, to principal due; and last, to any late charges due under the Note.

3. *Charges, Liens.* Borrower(s) shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower(s) shall pay these obligations directly to the person owed payment. Borrower(s) shall promptly furnish to Lender receipts evidencing the payments.

Borrower(s) shall promptly discharge any lien which has priority over this Security unless Borrower(s): (a) agree in writing to the payment of the obligation secured by the lien in a manner acceptable to the Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien

in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower(s) a notice identifying the lien. Borrower(s) shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

On default under this paragraph the Lender may, at its option, however, is in no way obligated to do so, pay any sums, without waiver of any other right of Lender by reason of such default by Borrower(s), and the Lender shall not be liable to the Borrower(s) for failure to exercise any such option. Borrower(s) shall repay immediately, upon written notice from the Lender all sums expended or advanced hereunder by or on the behalf of the Lender or Trustee, and the Lender at is option may impose interest on such expenditures and advances at the rate specified in the note, and the repayment thereof shall be secured hereby. Failure to repay such expenditures or advances and interest there on within ten (10) days of the mailing of such notice will, at the Lenders option will constitute a default hereunder or may commence action against the Borrower(s) for the recovery of such expenditure or advance and interest thereon, in which case the Borrower(s) shall be responsible for all costs and expenses incurred in such action, together with a reasonable attorney's fee.

4. *Hazard or Property Insurance.* Borrower(s) shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and against any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that the Lender requires. The insurance carrier providing the insurance shall be chosen by the Borrower(s) subject to the Lender's approval, which shall not be unreasonably withheld. If Borrower(s) fail to maintain coverage described above Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 6.

All insurance policies and renewals must be acceptable to the Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower(s) shall promptly give to the Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower(s) shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrowers.

Unless Lender and Borrower(s) otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this instrument, whether or not then due, with any excess paid to the Borrower(s). If Borrower(s) abandon the property, or does not answer within 30 days a notice from the Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30 day period will begin when the notice is given.

Unless Lender and Borrower(s) otherwise agree in writing, any application of proceeds to

principal shall not extend or postpone the due date of the monthly payments referred to in paragraph 1 or change the amount of the payments. If under paragraph 20 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

5. *Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds; Taxes.* Borrower(s) shall not destroy, damage, or impair the Property, allow the Property to deteriorate, or commit waste on the Property. The Borrower(s) shall use and occupy the Property for commercial purposes as disclosed to and agreed upon with the Lender during the loan application process. Borrower(s) shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower(s) may cure such a default and reinstate, as provided in paragraph 17 by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lenders security interest. Borrower(s) shall also be in default if Borrower(s), during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including but not limited to representations concerning the Borrower(s) use and occupancy of the Property. If this Security Instrument is on a leasehold, Borrower(s) shall comply with all provisions of the lease. If Borrower(s) acquires fee title to the Property, leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

6. *Protection of Lender's Rights in the Property.* If Borrower(s) fail to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatsoever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorney's fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 6, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 6 shall become additional debt of Borrower(s) secured by this Security Instrument. Unless Borrower(s) and Lender agree to the terms of the payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

7. *Mortgage Insurance.* If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower(s) shall pay the premiums required to maintain the mortgage insurance in effect. if, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower(s) shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to the Borrower(s) of the mortgage insurance previously in effect, from an alternative

mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower(s) shall pay to Lender each month a sum  equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower(s) when the  insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments shall no longer be required, at the option of the Lender, if mortgage insurance coverage (in the amount and for the period that the Lender requires) provided by an insurer approved by Lender again becomes available and is obtained.  Borrower(s) shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between the Borrower(s) and Lender or applicable law.

8. *Inspection.* Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower(s) notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

9. *Condemnation.* The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower(s). In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured  by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise  agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower(s). In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower(s) and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by the Borrower(s), or if, after notice by Lender to Borrower(s) that the condemnor offers to make an award or settle a claim for damages, Borrower(s) fail to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to the restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraph 1 or change the amount of such payments.

10. *Borrower(s) Not Released; Forbearance by Lender Not a Waiver.* Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by

Lender to any Borrower(s) or their successor in interest shall not operate to release the liability of the original Borrower(s) or their successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower(s)or their successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

     11. *Successors and Assigns Bound; Joint and Several Liability; Co-signers.* The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower(s), subject to the provisions of paragraph 16. Borrower's covenants and agreements shall be joint and several. Any Borrower(s) who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant, and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower(s) may agree to extend, modify, forbear, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

     12. *Loan Charges.* If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or to be collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower(s) which exceeded permitted limits will be refunded to Borrower(s). Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower(s). If a refund reduces principal, the reduction will be treated as a partial payment without any prepayment charge under the Note.

     13. *Notices.* Any notice to the Borrower(s) provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower(s) designate by notice to Lender. Any notice to Lender shall be given by First Class Mail to Lender's address stated herein or any other address Lender designates by notice to the Borrower(s). Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower(s) or Lender when given as provided in this paragraph.

     14. *Governing Law; Severability.* This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

     15. *Borrower's Copy.* Borrower(s) shall be given a conformed copy of the Note and of this Security Instrument.

     16. *Transfer of the Property or a Beneficial Interest in Borrower(s).* If all or any part of the

property or any interest in it is sold or transferred (or if a beneficial interest in Borrower(s) is sold or transferred and the Borrower(s) is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower(s) notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower(s) must pay all sums secured by this Security Instrument. If Borrower(s) fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument or the Note without further notice or demand on the Borrower(s).

17. *Borrower's Right to Reinstate.* If Borrower(s) meets certain conditions, Borrower(s) shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower(s): (a) pays Lender all sums which then would be due under the Security Instrument and Note as if no acceleration occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument , including but not limited to, reasonable attorney's fees; and (d) takes such action such action as Lender may reasonably require to assure that the lien established by this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged . Upon reimbursement by Borrower(s), this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 16.

18. *Sale of Note; Change of Loan Service.* The Note or a partial interest in the Note, together with this Security Instrument, may be sold one or more times without prior notice to Borrower(s). A sale may result in a change in the entity (hereinafter known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to the sale of the Note. If there is a change of the Loan Servicer, Borrower(s) will be given written notice of the change in accordance with paragraph 13 above and the applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by the applicable law.

19. *Borrower's right to collect rents.* As additional security Borrower(s) hereby assign to Lender all rents accruing on the Property. Borrower(s) shall have the right to collect and retain the rents as long as the Borrower(s) are not in default as provided herein. In the event of default the Lender shall be entitled to enter upon, take possession of and manage the property and collect rents. All rents so collected shall first be applied to the costs of managing the Property and collecting the rents, including fees for a receiver and an attorney, commission to rental agents, repairs and other necessary related expenses and then to payments on the indebtedness.

20. *Hazardous Substances.* Borrower(s) shall not cause or permit the presence, use, disposal,

storage, or release of any Hazardous Substances on or in the Property, except as they are ordinary to the course of the Borrower(s) business, and only for such commercial purposes as disclosed to and agreed upon with the Lender during the loan application process. Borrower(s) their agents, successors, heirs and assigns shall not, by any action or inaction on the Property, use or permit others to use the Property in violation of any Environmental Law and/or Regulation.

Borrower(s) shall promptly give the Lender written notice of any investigation, claim, demand, lawsuit, or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower(s) has actual knowledge. If Borrower(s) learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower(s) shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 19, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used under this paragraph 19, "Environmental Law" means federal laws and regulations and laws and regulations of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

21. *Acceleration; Remedies.* Lender shall give notice to Borrower(s) prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 16 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 15 days from the date the notice is given to Borrower(s), by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform the Borrower(s) of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of default or any other defense of Borrower(s) to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 20, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If lender invokes the power of sale, Trustee shall at the request of the Lender, sell the property conveyed, or a sufficiency thereof, to satisfy the indebtedness at public outcry to the highest bidder for cash. Sale of the property shall be advertised for three consecutive weeks preceding the sale in a newspaper published in the county where the property is situated , or if none is so published, then in some newspaper having a general circulation therein, and by posting a notice for the same time at the courthouse of the same county. The notice and advertisement shall disclose the names of the original debtors in this Deed of Trust. Debtors waive the provisions of Section 89-1-55 of the Mississippi Code of 1972 as amended, if applicable, as far as this section restricts the right of Trustee to offer at sale more than 160 acres at a time, and Trustee may offer the property herein conveyed as a whole, regardless of

how it is described.

Trustee shall deliver the purchaser a Trustee's Deed conveying the property without any covenant or warranty, express or implied. The recitals in the Trustee's Deed shall be prima facie evidence of the truth of the statements therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including but not limited to, reasonable Trustee's and attorney's fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or person legally entitled to it.

In the case of redemption as provided for herein, a purchaser may make such repairs or alterations on said property as may be reasonably necessary for the proper operation, care, preservation, protection, and insuring thereof. Any sums so paid together with interest thereon from the time of such expenditure at the highest lawful rate shall be added to and become a part of the amount required to be paid for redemption from such sale.

22. *Release.* Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower(s). If Trustee is requested to cancel this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs.

23. *Substitute Trustee.* Lender, at its option, may from time to time remove Trustee and appoint a successor Trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power, and duties conferred upon Trustee herein and by applicable law.

24. *Riders to this Security Instrument.* If one or more riders are executed by Borrower(s) and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

25. *Time is of the essence.* Time is of the essence hereof in connection with all obligations of the Borrower(s) herein and in said Note. By accepting payment of any sum secured hereby after its due date, the Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

26. *Due on Transfer Clause*: If all or any part of the Property, or an interest therein, is sold or transferred by Debtor, excluding (a) the creation of a lien subordinate to this Deed of Trust, (b) a transfer by devise, descent or operation of law upon the death of a joint owner, or (c) the grant of a leasehold interest of three years of less not containing an option to purchase, Lender may declare all indebtedness to be immediately due and payable, unless transfer is agreed upon in writing by the Lender. If the Lender elects to exercise its option to accelerate, the Lender shall provide notice to the Borrower(s) of acceleration and may invoke any of the remedies set forth in this Deed of Trust.

BY SIGNING BELOW, Borrower(s) accept and agree to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower(s) and recorded with it.

PROFESSIONAL SERVICES OF POTTS CAMP, INC., A MISSISSIPPI CORPORATION

BY:    DIANE G. TAYLOR, PRESIDENT

DIANE G. TAYLOR, INDIVIDUALLY and AS ATTORNEY IN FACT FOR TERRY E. HOOVER

STATE OF MISSISSIPPI                                   Book 0244 Page    10

COUNTY OF TIPPAH

PERSONALLY appeared before me, the undersigned authority in and for the County and State, on this the 12th day of December, 2016, within my jurisdiction, the within named, **DIANE G. TAYLOR**, who acknowledged to me that she is President of Professional Services of Potts Camp, Mississippi and that for and on behalf of said corporation and as the act and deed of said corporation, she executed the above and foregoing instrument, after first having been duly authorized so to do.

NOTARY PUBLIC

(SEAL)

My Commission Expires:

STATE OF MISSISSIPPI
DAWN G. VANCE
ID No
101612
NOTARY PUBLIC
Comm Expires
March 8, 2020
TIPPAH COUNTY

Book 0244 Page    11

STATE OF MISSISSIPPI

COUNTY OF TIPPAH

PERSONALLY appeared before me, the undersigned authority in and for the County and State, on this the 12th day of December, 2016, within my jurisdiction, the within named, **DIANE G. TAYLOR**, who acknowledged to me that she is the Attorney in Fact for Terry E. Hoover, and pursuant to the authority conferred upon her by said Instrument, she executed the above and foregoing instrument, after first having been duly authorized so to do.

NOTARY PUBLIC

(SEAL)

My Commission Expires:

STATE OF MISSISSIPPI

COUNTY OF TIPPAH

PERSONALLY appeared before me, the undersigned authority in and for the County and State, on this the 12th day of December, 2016, within my jurisdiction, the within named, **DIANE G. TAYLOR**, who acknowledged  she executed the above and foregoing instrument as and for her act and deed.

NOTARY PUBLIC

(SEAL)

My Commission Expires:

Page 11 of 15

Exhibit "A" - Marshall County, Mississippi

Book 0244 Page    12

INDEXING:     A 0.748 ACRE TRACT OF LAND IN THE NORTHEAST QUARTER AND
SOUTHEAST QUARTER OF THE NORTHWEST QUARTER OF
SECTION 16, TOWNSHIP 5 SOUTH, RANGE 1 WEST, POTTS CAMP,
MARSHALL COUNTY, MISSISSIPPI, and being more particularly
described as follows:

Commence at a "t" post found at a sand rock, being the Northwest Corner of Section 16,
Township 5 South, Range 1 West; thence East 1878.74 feet; thence South 1273.73 feet to a ½" re-
bar set on the West right of way of Mississippi Highway 178 and the North right of way of Homan
Road, said point being the POINT OF BEGINNING; thence South 67 degrees 54 minutes 49
seconds West 247.67 feet, along the North right of way of Homan Road to a ½" re-bar set; thence
South 85 degrees 11 minutes 15 seconds West 8.61 feet, along said right of way to a ½" re-bar set;
thence North 23 degrees 02 minutes 00 seconds West 124.38 feet to a ½" re-bar set; thence North
67 degrees 55 minutes 47 seconds East 257.98 feet to a ½" re-bar set on the West right of way of
Mississippi Highway 178; thence South 22 degrees 04 minutes 15 seconds East 126.85 feet along
said right of way to the POINT OF BEGINNING.

Said Tract containing 0.748 acres, more or less (32,588).

All according to survey of Don Hollingsworth Surveying, LS #2525, dated December 22, 2003.

TOGETHER WITH ALL BUILDINGS, HEREDITAMENTS AND APPURTENANCES
THEREUNTO BELONGING.

Page 12 of 15

Exhibit "B" - Benton County, Mississippi

**INDEXING:    A LOT IN BLOCK NO. 14 OF THE TOWN OF ASHLAND, MISSISSIPPI, described as:**

BEGINNING at a stake 144 feet North of the Southeast Corner of the lots owned by Henry J. Taylor and wife, Mattie R. Taylor, which is the POINT OF BEGINNING of this description; thence running West along the North line of the Henry J. Taylor property a distance of 114 feet to a set stake; thence running North a distance of 74 feet to a set stake which is the Southwest Corner of the lot owned by J. T. Purcell; thence running East along the South line of the J.T. Purcell property a distance of 114 feet to a set stake; thence running South along the west boundary of Walnut Street a distance of 74 feet to the POINT OF BEGINNING.

TOGETHER WITH ALL BUILDINGS, HEREDITAMENTS AND APPURTENANCES THEREUNTO BELONGING.

Book 0244 Page 14

Exhibit "B" - Benton County, Mississippi

INDEXING:  34.8 ACRES, MORE OR LESS, IN THE NORTHWEST QUARTER OF SECTION 3, TOWNSHIP 3 SOUTH, RANGE 1 EAST, BENTON COUNTY, MISSISSIPPI.

48.80 acres of land located in the Northwest Quarter of Section 3, Township 3 South, Range 1 East, Benton County, Mississippi, and more particularly described as follows, to-wit: COMMENCE at the Northeast corner of the Northwest Quarter of said Section 3; thence, run South 20.0 feet to the South side of the Public Road for the POINT OF BEGINNING; from the POINT OF BEGINNING, run along a fence South 00 degrees 59 minutes West 462.6 feet; thence South 00 degrees 08 minutes West 779.3 feet; thence, leaving said fence, run South 323.6 feet to a point, thence run South 47 degrees West 262.0 feet to an iron pin (set); thence run North 44 degrees 15 minutes West 360.0 feet to an iron pin (set); thence run South 47 degrees West 253 feet to a point on the North Right of Way line of Mississippi Highway #5 (50.0 feet from center line); thence along said Right of Way line run North 44 degrees 57 minutes West 1462.5 feet to a point (40.0 feet from center line); thence leaving said road, run North 45 degrees 08 minutes East 210.0 feet to a point; thence, run North 44 degrees 15 minutes West 210.0 feet to a point; thence run South 45 degrees 08 minutes West 210.0 feet to a point on the North Right of Way line of Mississippi Highway #5 (40.0 feet from center line); thence along said Right of Way line run North 44 degrees 15 minutes West 278.7 feet to a point; thence, leaving said road, run along the center line of a ditch: North 60 degrees 31 minutes East 226.7 feet; thence North 85 degrees 16 minutes East 188.8 feet; thence North 84 degrees 53 minutes East 123.5 feet; thence South 83 degrees 45 minutes East 148.3 feet; thence South 44 degrees 57 minutes East 194.2 feet; thence South 59 degrees 24 minutes East 84.2 feet; thence South 58 degrees 15 minutes East 67.5 feet; thence South 74 degrees 30 minutes East 90.0 feet; thence South 80 degrees 30 minutes East 100.0 feet; thence leaving said ditch, run North 24 degrees 30 minutes West 18.5 feet to an iron pin (set); from said point, run North 50 degrees 30 minutes West 153.0 feet to a point; thence run North 39 degrees 50 minutes West 100.0 feet to a point; thence run North 25 degrees West 100.0 feet to a point; thence run North 20 degrees West 145.0 feet to an iron pin (set) on the South side of the public road; thence along the South side of said road, run South 89 degrees 32 minutes East 1185.4 feet to the POINT OF BEGINNING.

LESS & EXCEPT THE FOLLOWING ACREAGE PREVIOUSLY CONVEYED:

(A) Twelve acres (12) more or less, located in the Northwest Quarter of Section 3, Township 3 South, Range 1 East, Benton County, Mississippi

(B)  1.504 ACRES OF LAND LOCATED IN THE NORTHWEST QUARTER OF SECTION 3, TOWNSHIP 3 SOUTH, RANGE 1 EAST, BENTON COUNTY, MISSISSIPPI.

©   1.263 ACRES OF LAND LOCATED IN THE NORTHWEST QUARTER OF SECTION 3, TOWNSHIP 3 SOUTH, RANGE 1 EAST, BENTON COUNTY, MISSISSIPPI,

(NOTE: This property was sold N. L. Jones Funeral Home as commercial lot)

**(D)**    2.0 acres, more or less, in the Northwest Quarter of Section 3, Township 3 South, Range 1 East, Benton County, Mississippi.

**Subject to:   All easements and rights of way for public roads, utilities and highway easements and gas transmission lines which might cross said property.**

Book 0244 Page   15





STATE OF MS
COUNTY OF MARSHAL
FILED & RECORDED

2016 DEC 20  PM 2: 00



**Instrument 2016004771**
Filed/Recorded 12/20/2016 02:00 P
16 Pages Recorded
Chuck Thomas, Chancery Clerk
Marshall County Mississippi

*Not FOR Publication*
*Return to Professional Services*

Benton County, Mississippi
Filed and Recorded
DECEMBER 29, 2016
Inst. 201601291 Book 0244 Page
Marlene McKenzie, Chancery Clerk
09:37:04AM
16

Prepared by & Return to:
Professional Services of Potts Camp, Inc.
40 Homan Drive/ P.O. Box 130
Potts Camp, Mississippi 38659

Address of Grantor/Borrower(s):

Professional Services of Potts Camp, Inc.
P O Box 130
Potts Camp, MS 38659
662-333-9009

Address of Grantee/Lender:

Northeast Mississippi Planning & Development District
619 E. Park Drive, P. O. Box 600
Booneville, MS 38829
662-728-7038

INDEXING:  Marshall County, MS: 0.748 @ NW-1/4 of Section 16, Township 5 South, Range 1
West.

Benton County:    Tract in NW-1/4 Section 3, Township 3 South, Range 1 East
And Pt of Block 14, Town of Ashland

## DEED OF TRUST
### (Second Mortgage)

THIS DEED OF TRUST ("Security Instrument") is made on this 12th day of December, 2016.

The Grantor is PROFESSIONAL SERVICES OF POTTS CAMP, INC., AND DIANE G.
TAYLOR, ( hereinafter "Borrower(s)").

The trustee is Fred C. Permenter, Jr..

The beneficiary is NORTHEAST MISSISSIPPI PLANNING & DEVELOPMENT DISTRICT,
whose address is 619 E. Park Drive, Booneville, MS 38829, 662-728-7038 (hereinafter
"Lender").

This Deed of Trust secures a Promissory Note executed by PROFESSIONAL SERVICES OF
POTTS CAMP, INC. to the Lender the principal sum ONE HUNDRED SIXTY TWO THOUSAND
FIVE HUNDRED AND N0/100 DOLLARS, ($162,500.00) as with interest and terms set forth in the
promissory note of even date; also all renewals, modifications, or extensions thereof, and also such

further sums as may be advanced or loaned by Lender to the Borrower(s), and its successors, assigns, together with interest thereon at such rate as shall be agreed upon. This debt is evidenced by Borrower's note ("Note"), dated the same date as this Security Instrument, which provides for monthly payments, with the full debt, if not paid earlier, due and payable on January 1, 2032.

This Security Instrument secures to the Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions, and modifications of the Note; (b) the payment of all other sums, with interest advanced under paragraph 3 to protect the security of this Security Instrument; and (c) the performance of Borrower(s)' covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower(s) irrevocably grant, bargain, sell, and convey to Trustee, in trust, with power of sale the of the following described property in Marshall County, Mississippi, and Benton County, Mississippi, to-wit:

**See Legal Description attached hereto as Exhibit "A".**

Together with all improvements, hereditaments, and appurtenances now or hereafter erected on, and all fixtures of any and every description now or hereafter attached to said land (all being referred to as the "Property").

THIS IS A SECOND MORTGAGE DEED OF TRUST AND IS JUNIOR AND INFERIOR TO THE FIRST MORTGAGE DEED OF TRUST DATED THE 12th day of December, 2016 AND EXECUTED BY PROFESSIONAL SERVICES OF POTTS CAMP, INC. AND DIANE G. TAYLOR TO NORTHEAST MISSISSIPPI PLANNING & DEVELOPMENT DISTRICT.

Borrower(s) COVENANT that Borrower(s) are lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrowers warrant and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower(s) and Lender covenant and agree as follows:

1. *Payment of Principal and Interest; Prepayment and Late Charges.*  Borrowers shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. *Application of Payments.* Unless applicable law provides otherwise, all payments received by Lender under paragraph 1 shall be applied: first, to any prepayment charges due under the Note; second, to interest due; third, to principal due; and last, to any late charges due under the Note.

3. *Charges, Liens.* Borrower(s) shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower(s) shall pay these obligations directly to the person owed payment. Borrower(s) shall promptly furnish to Lender receipts evidencing the payments.

Borrower(s) shall promptly discharge any lien which has priority over this Security unless Borrower(s): (a) agree in writing to the payment of the obligation secured by the lien in a manner acceptable to the Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower(s) a notice identifying the lien. Borrower(s) shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

On default under this paragraph the Lender may, at its option, however, is in no way obligated to do so, pay any sums, without waiver of any other right of Lender by reason of such default by Borrower(s), and the Lender shall not be liable to the Borrower(s) for failure to exercise any such option. Borrower(s) shall repay immediately, upon written notice from the Lender all sums expended or advanced hereunder by or on the behalf of the Lender or Trustee, and the Lender at is option may impose interest on such expenditures and advances at the rate specified in the note, and the repayment thereof shall be secured hereby.  Failure to repay such expenditures or advances and interest there on within ten (10) days of the mailing of such notice will, at the Lenders option will constitute a default hereunder or may commence action against the Borrower(s) for the recovery of such expenditure or advance and interest thereon, in which case the Borrower(s) shall be responsible for all costs and expenses incurred in such action, together with a reasonable attorney's fee.

4. *Hazard or Property Insurance.*  Borrower(s) shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and against any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that the Lender requires. The insurance carrier providing the insurance shall be chosen by the Borrower(s) subject to the Lender's approval, which shall not be unreasonably withheld.  If Borrower(s) fail to maintain coverage described above Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 6.

All insurance policies and renewals must be acceptable to the Lender and shall include a standard

mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower(s) shall promptly give to the Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower(s) shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrowers.

Unless Lender and Borrower(s) otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this instrument, whether or not then due, with any excess paid to the Borrower(s). If Borrower(s) abandon the property, or does not answer within 30 days a notice from the Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30 day period will begin when the notice is given.

Unless Lender and Borrower(s) otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraph 1 or change the amount of the payments. If under paragraph 20 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

5. *Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds; Taxes.* Borrower(s) shall not destroy, damage, or impair the Property, allow the Property to deteriorate, or commit waste on the Property. The Borrower(s) shall use and occupy the Property for commercial purposes as disclosed to and agreed upon with the Lender during the loan application process. Borrower(s) shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower(s) may cure such a default and reinstate, as provided in paragraph 17 by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lenders security interest. Borrower(s) shall also be in default if Borrower(s), during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including but not limited to representations concerning the Borrower(s) use and occupancy of the Property. If this Security Instrument is on a leasehold, Borrower(s) shall comply with all provisions of the lease. If Borrower(s) acquires fee title to the Property, leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

6. *Protection of Lender's Rights in the Property.* If Borrower(s) fail to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for

Book 0244 Page 20

whatsoever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorney's fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 6, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 6 shall become additional debt of Borrower(s) secured by this Security Instrument. Unless Borrower(s) and Lender agree to the terms of the payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

7. *Mortgage Insurance.* If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower(s) shall pay the premiums required to maintain the mortgage insurance in effect. if, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower(s) shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to the Borrower(s) of the mortgage insurance previously in effect, from an alternative mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower(s) shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower(s) when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments shall no longer be required, at the option of the Lender, if mortgage insurance coverage (in the amount and for the period that the Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower(s) shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between the Borrower(s) and Lender or applicable law.

8. *Inspection.* Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower(s) notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

9. *Condemnation.* The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower(s). In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower(s). In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless

Borrower(s) and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by the Borrower(s), or if, after notice by Lender to Borrower(s) that the condemnor offers to make an award or settle a claim for damages, Borrower(s) fail to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to the restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraph 1 or change the amount of such payments.

10. *Borrower(s) Not Released; Forbearance by Lender Not a Waiver.* Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any Borrower(s) or their successor in interest shall not operate to release the liability of the original Borrower(s) or their successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower(s)or their successors in interest. Any forbearance by Lender  in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

11. *Successors and Assigns Bound; Joint and Several Liability; Co-signers.* The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower(s), subject to the provisions of paragraph 16. Borrower's covenants and agreements shall be joint and several. Any Borrower(s) who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant, and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower(s) may agree to extend, modify, forbear, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

12. *Loan Charges.* If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or to be collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower(s) which exceeded permitted limits will be refunded to Borrower(s). Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower(s). If a refund reduces principal, the reduction will be treated as a partial payment without any prepayment charge under the Note.

13. *Notices.* Any notice to the Borrower(s) provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower(s) designate

Page 6 of  16

by notice to Lender. Any notice to Lender shall be given by First Class Mail to Lender's address stated herein or any other address Lender designates by notice to the Borrower(s). Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower(s) or Lender when given as provided in this paragraph.

14. *Governing Law; Severability.* This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. *Borrower's Copy.* Borrower(s) shall be given a conformed copy of the Note and of this Security Instrument.

16. *Transfer of the Property or a Beneficial Interest in Borrower(s).* If all or any part of the property or any interest in it is sold or transferred (or if a beneficial interest in Borrower(s) is sold or transferred and the Borrower(s) is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower(s) notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower(s) must pay all sums secured by this Security Instrument. If Borrower(s) fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument or the Note without further notice or demand on the Borrower(s).

17. *Borrower's Right to Reinstate.* If Borrower(s) meets certain conditions, Borrower(s) shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower(s): (a) pays Lender all sums which then would be due under the Security Instrument and Note as if no acceleration occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument , including but not limited to, reasonable attorney's fees; and (d) takes such action such action as Lender may reasonably require to assure that the lien established by this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged . Upon reimbursement by Borrower(s), this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 16.

18. *Sale of Note; Change of Loan Service.* The Note or a partial interest in the Note, together with this Security Instrument, may be sold one or more times without prior notice to Borrower(s). A sale may result in a change in the entity (hereinafter known as the "Loan Servicer") that collects monthly

payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to the sale of the Note. If there is a change of the Loan Servicer, Borrower(s) will be given written notice of the change in accordance with paragraph 13 above and the applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by the applicable law.

19. *Borrower's right to collect rents.* As additional security Borrower(s) hereby assign to Lender all rents accruing on the Property. Borrower(s) shall have the right to collect and retain the rents as long as the Borrower(s) are not in default as provided herein. In the event of default the Lender shall be entitled to enter upon, take possession of and manage the property and collect rents. All rents so collected shall first be applied to the costs of managing the Property and collecting the rents, including fees for a receiver and an attorney, commission to rental agents, repairs and other necessary related expenses and then to payments on the indebtedness.

20. *Hazardous Substances.* Borrower(s) shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property, except as they are ordinary to the course of the Borrower(s) business, and only for such commercial purposes as disclosed to and agreed upon with the Lender during the loan application process. Borrower(s) their agents, successors, heirs and assigns shall not, by any action or inaction on the Property, use or permit others to use the Property in violation of any Environmental Law and/or Regulation.

Borrower(s) shall promptly give the Lender written notice of any investigation, claim, demand, lawsuit, or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower(s) has actual knowledge. If Borrower(s) learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower(s) shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 19, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used under this paragraph 19, "Environmental Law" means federal laws and regulations and laws and regulations of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

21. *Acceleration; Remedies.* Lender shall give notice to Borrower(s) prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 16 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 15 days from the date the notice is given to Borrower(s), by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform the Borrower(s) of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of default or

any other defense of Borrower(s) to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 20, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If lender invokes the power of sale, Trustee shall at the request of the Lender, sell the property conveyed, or a sufficiency thereof, to satisfy the indebtedness at public outcry to the highest bidder for cash. Sale of the property shall be advertised for three consecutive weeks preceding the sale in a newspaper published in the county where the property is situated , or if none is so published, then in some newspaper having a general circulation therein, and by posting a notice for the same time at the courthouse of the same county. The notice and advertisement shall disclose the names of the original debtors in this Deed of Trust. Debtors waive the provisions of Section 89-1-55 of the Mississippi Code of 1972 as amended, if applicable, as far as this section restricts the right of Trustee to offer at sale more than 160 acres at a time, and Trustee may offer the property herein conveyed as a whole, regardless of how it is described.

Trustee shall deliver the purchaser a Trustee's Deed conveying the property without any covenant or warranty, express or implied. The recitals in the Trustee's Deed shall be prima facie evidence of the truth of the statements therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including but not limited to, reasonable Trustee's and attorney's fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

In the case of redemption as provided for herein, a purchaser may make such repairs or alterations on said property as may be reasonably necessary for the proper operation, care, preservation, protection, and insuring thereof. Any sums so paid together with interest thereon from the time of such expenditure at the highest lawful rate shall be added to and become a part of the amount required to be paid for redemption from such sale.

22. *Release.* Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower(s). If Trustee is requested to cancel this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs.

23. *Substitute Trustee.* Lender, at its option, may from time to time remove Trustee and appoint a successor Trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power, and duties conferred upon Trustee herein and by applicable law.

24. *Riders to this Security Instrument.* If one or more riders are executed by Borrower(s) and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

25. *Time is of the essence.* Time is of the essence hereof in connection with all obligations of the Borrower(s) herein and in said Note. By accepting payment of any sum secured hereby after its due date, the Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

26. *Due on Transfer Clause*: If all or any part of the Property, or an interest therein, is sold or transferred by Debtor, excluding (a) the creation of a lien subordinate to this Deed of Trust, (b) a transfer by devise, descent or operation of law upon the death of a joint owner, or (c) the grant of a leasehold interest of three years of less not containing an option to purchase, Lender may declare all indebtedness to be immediately due and payable, unless transfer is agreed upon in writing by the Lender. If the Lender elects to exercise its option to accelerate, the Lender shall provide notice to the Borrower(s) of acceleration and may invoke any of the remedies set forth in this Deed of Trust.

BY SIGNING BELOW, Borrower(s) accept and agree to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower(s) and recorded with it.

PROFESSIONAL SERVICES OF POTTS CAMP, INC., A MISSISSIPPI CORPORATION

BY;   DIANE G. TAYLOR, PRESIDENT

DIANE G. TAYLOR, INDIVIDUALLY

DIANE G. TAYLOR, INDIVIDUALLY and AS ATTORNEY IN FACT FOR TERRY E. HOOVER

STATE OF MISSISSIPPI

COUNTY OF TIPPAH

Book 0244 Page    26

PERSONALLY appeared before me, the undersigned authority in and for the County and State, on this the 12th day of December, 2016, within my jurisdiction, the within named, **DIANE G. TAYLOR,** who acknowledged to me that she is President of Professional Services of Potts Camp, Mississippi and that for and on behalf of said corporation and as the act and deed of said corporation, she executed the above and foregoing instrument, after first having been duly authorized so to do.

NOTARY PUBLIC

(SEAL)

My Commission Expires:

STATE OF MISSISSIPPI

COUNTY OF TIPPAH

PERSONALLY appeared before me, the undersigned authority in and for the County and State, on this the 12th day of December, 2016, within my jurisdiction, the within named, **DIANE G. TAYLOR,** who acknowledged to me that she is the Attorney in Fact for Terry E. Hoover, and pursuant to the authority conferred upon her by said Instrument, she executed the above and foregoing instrument, after first having been duly authorized so to do.

NOTARY PUBLIC

(SEAL)

My Commission Expires:

Page 11 of 16

STATE OF MISSISSIPPI

Book 0244 Page    27

COUNTY OF TIPPAH

PERSONALLY appeared before me, the undersigned authority in and for the County and State, on this the 12th day of December, 2016, within my jurisdiction, the within named, **DIANE G. TAYLOR,** who acknowledged  she executed the above and foregoing instrument as and for her act and deed.

NOTARY PUBLIC

(SEAL)

My Commission Expires:

STATE OF MISSISSIPPI
DAWN G. VANCE
ID No
101612
NOTARY PUBLIC
Comm Expires
March 8, 2020
TIPPAH COUNTY

Page 12 of  16

Exhibit "A"  - Marshall County, Mississippi

Book 0244 Page  28

**INDEXING:**  A 0.748 ACRE TRACT OF LAND IN THE NORTHEAST QUARTER AND SOUTHEAST QUARTER OF THE NORTHWEST QUARTER OF SECTION 16, TOWNSHIP 5 SOUTH, RANGE 1 WEST, POTTS CAMP, MARSHALL COUNTY, MISSISSIPPI, and being more particularly described as follows:

Commence at a "t" post found at a sand rock, being the Northwest Corner of Section 16, Township 5 South, Range 1 West; thence East 1878.74 feet; thence South 1273.73 feet to a ½" re-bar set on the West right of way of Mississippi Highway 178 and the North right of way of Homan Road, said point being the POINT OF BEGINNING; thence South 67 degrees 54 minutes 49 seconds West 247.67 feet, along the North right of way of Homan Road to a ½" re-bar set; thence South 85 degrees 11 minutes 15 seconds West 8.61 feet, along said right of way to a ½" re-bar set; thence North 23 degrees 02 minutes 00 seconds West 124.38 feet to a ½" re-bar set; thence North 67 degrees 55 minutes 47 seconds East 257.98 feet to a ½" re-bar set on the West right of way of Mississippi Highway 178; thence South 22 degrees 04 minutes 15 seconds East 126.85 feet along said right of way to the POINT OF BEGINNING.

Said Tract containing 0.748 acres, more or less (32,588).

All according to survey of Don Hollingsworth Surveying, LS #2525, dated December 22, 2003.

TOGETHER WITH ALL BUILDINGS, HEREDITAMENTS AND APPURTENANCES THEREUNTO BELONGING.

Page 13 of 16

Book 0244 Page    29

Exhibit "B" - Benton County, Mississippi

**INDEXING:    A LOT IN BLOCK NO. 14 OF THE TOWN OF ASHLAND, MISSISSIPPI, described as:**

**BEGINNING at a stake 144 feet North of the Southeast Corner of the lots owned by Henry J. Taylor and wife, Mattie R. Taylor, which is the POINT OF BEGINNING of this description; thence running West along the North line of the Henry J. Taylor property a distance of 114 feet to a set stake; thence running North a distance of 74 feet to a set stake which is the Southwest Corner of the lot owned by J. T. Purcell; thence running East along the South line of the J.T. Purcell property a distance of 114 feet to a set stake; thence running South along the west boundary of Walnut Street a distance of 74 feet to the POINT OF BEGINNING.**

**TOGETHER WITH ALL BUILDINGS, HEREDITAMENTS AND APPURTENANCES THEREUNTO BELONGING.**

Book 0244 Page  30

Exhibit "B" - Benton County, Mississippi

**INDEXING: 34.8 ACRES, MORE OR LESS, IN THE NORTHWEST QUARTER OF SECTION 3, TOWNSHIP 3 SOUTH, RANGE 1 EAST, BENTON COUNTY, MISSISSIPPI.**

48.80 acres of land located in the Northwest Quarter of Section 3, Township 3 South, Range 1 East, Benton County, Mississippi, and more particularly described as follows, to-wit: COMMENCE at the Northeast corner of the Northwest Quarter of said Section 3; thence, run South 20.0 feet to the South side of the Public Road for the POINT OF BEGINNING; from the POINT OF BEGINNING, run along a fence South 00 degrees 59 minutes West 462.6 feet; thence South 00 degrees 08 minutes West 779.3 feet; thence, leaving said fence, run South 323.6 feet to a point, thence run South 47 degrees West 262.0 feet to an iron pin (set); thence run North 44 degrees 15 minutes West 360.0 feet to an iron pin (set); thence run South 47 degrees West 253 feet to a point on the North Right of Way line of Mississippi Highway #5 (50.0 feet from center line); thence along said Right of Way line run North 44 degrees 57 minutes West 1462.5 feet to a point (40.0 feet from center line); thence leaving said road, run North 45 degrees 08 minutes East 210.0 feet to a point; thence, run North 44 degrees 15 minutes West 210.0 feet to a point; thence run South 45 degrees 08 minutes West 210.0 feet to a point on the North Right of Way line of Mississippi Highway #5 (40.0 feet from center line); thence along said Right of Way line run North 44 degrees 15 minutes West 278.7 feet to a point; thence, leaving said road, run along the center line of a ditch: North 60 degrees 31 minutes East 226.7 feet; thence North 85 degrees 16 minutes East 188.8 feet; thence North 84 degrees 53 minutes East 123.5 feet; thence South 83 degrees 45 minutes East 148.3 feet; thence South 44 degrees 57 minutes East 194.2 feet; thence South 59 degrees 24 minutes East 84.2 feet; thence South 58 degrees 15 minutes East 67.5 feet; thence South 74 degrees 30 minutes East 90.0 feet; thence South 80 degrees 30 minutes East 100.0 feet; thence leaving said ditch, run North 24 degrees 30 minutes West 18.5 feet to an iron pin (set); from said point, run North 50 degrees 30 minutes West 153.0 feet to a point; thence run North 39 degrees 50 minutes West 100.0 feet to a point; thence run North 25 degrees West 100.0 feet to a point; thence run North 20 degrees West 145.0 feet to an iron pin (set) on the South side of the public road; thence along the South side of said road, run South 89 degrees 32 minutes East 1185.4 feet to the POINT OF BEGINNING.

**LESS & EXCEPT THE FOLLOWING ACREAGE PREVIOUSLY CONVEYED:**

(A) Twelve acres (12) more or less, located in the Northwest Quarter of Section 3, Township 3 South, Range 1 East, Benton County, Mississippi

**(B)   1.504 ACRES OF LAND LOCATED IN THE NORTHWEST QUARTER OF SECTION 3, TOWNSHIP 3 SOUTH, RANGE 1 EAST, BENTON COUNTY, MISSISSIPPI.**

©     1.263 ACRES OF LAND LOCATED IN THE NORTHWEST QUARTER OF SECTION 3,

**TOWNSHIP 3 SOUTH, RANGE 1 EAST, BENTON COUNTY, MISSISSIPPI,**
(NOTE: This property was sold N. L. Jones Funeral Home as commercial lot)

**(D)**   2.0 acres, more or less, in the Northwest Quarter of Section 3, Township 3 South, Range 1 East, Benton County, Mississippi.

Subject to:  All easements and rights of way for public roads, utilities and highway easements and gas transmission lines which might cross said property.

Book 0244 Page   31

**COPY**

STATE OF MISSISSIPPI

COUNTY OF MARSHALL

<u>CERTIFICATE OF TITLE</u>

I certify that on this day I have carefully examined the records of the Marshall County

Courthouse for those instruments which are properly indexed and recorded in the offices of the

Chancery Clerk, Circuit Clerk and Tax Collector, in their respective indexes, to-wit: The Sectional

Land Index to Construction Liens, Federal Tax Lien Records, and applicable land tax records, all of

the preceding as reflected by the properly indexed indices of each of the records listed above and is

in no way intended to reflect the status of any unrecorded homestead rights, and the Judgment Roll,

as it reflects the names as listed in the Deed records of the above-described land, which are properly

indexed in the Sectional Land Index or Tract Book in the office of the Chancery Clerk of Marshall

County, Mississippi, and is subject to the accuracy of computer hardware and software and electronic

retrieval of names as listed in the deeds vesting ownership in the captioned land at the time the

records were reviewed (a/k/a computer glitches), if applicable to this county, and is not based on

the examination of the Direct and Reverse Index in the office of the Chancery Clerk. This Certificate

is limited to a period of Seven (7) years in reference to records regarding judgments and to a period

of three (3) years in regard to the City and/or County property taxes, which pertain to the title of the

property situated in Marshall County, Mississippi, and more particularly described as:

INDEXING:          **A 0.748 ACRE TRACT OF LAND IN THE NORTHEAST QUARTER
                   AND SOUTHEAST QUARTER OF THE NORTHWEST QUARTER
                   OF SECTION 16, TOWNSHIP 5 SOUTH, RANGE 1 WEST, POTTS
                   CAMP, MARSHALL COUNTY, MISSISSIPPI, and being more
                   particularly described as follows:**

**Commence at a "t" post found at a sand rock, being the Northwest Corner of Section 16,**

Exhibit "C"

Township 5 South, Range 1 West; thence East 1878.74 feet; thence South 1273.73 feet to a ½" re-bar set on the West right of way of Mississippi Highway 178 and the North right of way of Homan Road, said point being the POINT OF BEGINNING; thence South 67 degrees 54 minutes 49 seconds West 247.67 feet, along the North right of way of Homan Road to a ½" re-bar set; thence South 85 degrees 11 minutes 15 seconds West 8.61 feet, along said right of way to a ½" re-bar set; thence North 23 degrees 02 minutes 00 seconds West 124.38 feet to a ½" re-bar set; thence North 67 degrees 55 minutes 47 seconds East 257.98 feet to a ½" re-bar set on the West right of way of Mississippi Highway 178; thence South 22 degrees 04 minutes 15 seconds East 126.85 feet along said right of way to the POINT OF BEGINNING.

Said Tract containing 0.748 acres, more or less (32,588).

All according to survey of Don Hollingsworth Surveying, LS #2525, dated December 22, 2003.

TOGETHER WITH ALL BUILDINGS, HEREDITAMENTS AND APPURTENANCES THEREUNTO BELONGING.

SOURCE DEED:  This is the same land and property to Professional Services of Potts Camp, Inc. by special warranty deed executed by J. M. Ash Woodyard, Inc. dated December 31, 2004, and recorded in Land Deed Book No. 343 at pages 83-86  in the office of the Chancery Clerk of Marshall County, Mississippi.

SUBJECT TO:  Rights of way and easements for public road and utilities.

SUBJECT TO: Laws, ordinances and regulations which govern the use and occupancy of this land enacted by the United States of America, the State of Mississippi and its political subdivisions, and particularly including the subdivision regulations and zoning ordinances adopted by ordinances of the Board of Supervisors of Marshall County, Mississippi, none of which render title unmarketable.

THE AFOREMENTIONED PROPERTY IS:

1.      Subject to the payment of ad valorem taxes for the year 2016 which although not due and payable until 1 January 2017 still constitutes a lien.  2015 taxes for PPIN#205545 have been paid.

2.      Subject A Deed of Trust from Professional Services of Potts Camp, Inc. to Fred C. Permenter Jr., Trustee for the benefit of THE PEOPLES BANK, Beneficiary, dated May 29, 2007, to secure a promissory note in the amount of $225,000.00, with interest and terms as provided therein, recorded in **Trust Deed Book No. 440, at Page 209**, on June 4, 2007, in the Office of the Chancery

Clerk of Marshall County, Mississippi.

B) A Deed of Trust from Professional Services of Potts Camp, Inc. to Fred C. Permenter, Jr., Trustee for the benefit of THE PEOPLES BANK, Beneficiary, dated June 23, 2008 to secure a promissory note in the amount of $249,011.77, with interest and terms as provided therein, recorded as **Instrument No. 2008003912, which was filed on July 8, 2008** in the Office of the Chancery Clerk of Marshall County, Mississippi.

C) A deed of trust from Professional Services of Potts Camp, Inc. to Fred C. Permenter, Jr., Trustee for the benefit of THE PEOPLES BANK, Beneficiary, dated August 24, 2016 to secure a promissory note in the amount of $11,976.70, with interest and terms as provided therein, recorded as **Instrument No. 2016003261** in the Office of the Chancery Clerk of Marshall County, Mississippi.

3.      Subject to any rights of way and easements for public roads and utilities, any other easements, any subdivision and zoning ordinances of the governmental authority having jurisdiction over the above described property, any applicable building restrictions, and any restrictive covenants of record.

4.      Subject to rights of parties in possession, deficiency in quantity of land, any contiguous property which might overlap the subject property, whether the same be through error of survey or description, boundary line disputes, roadways, including lack of access, unrecorded servitudes or easements, rights to possession of the whole or a part of said property perfected by adverse possession if any such right there may be, violations of wetlands regulations, or other matters which would be disclosed by an accurate survey or inspection of the property, any errors of recording or indexing made by the offices of the Chancery Clerk, Circuit Clerk and Tax Assessor and Collector

of Marshall County, Mississippi; and further subject to any instruments not appearing of record as of the applicable date of this opinion.

5.     Any prior reservation of conveyance, together with release of damages of minerals of every kind and character, including, but not limited to oil, gas, sand, and gravel, in, on, and under subject property.

6.     Subject to any environmental condition existing upon the subject property which would cause said property to be violation of any state and/or federal environmental protection laws.  This Certificate does not express an opinion as to any environmental condition which may be in violation of such laws and is subject to any such condition which may affect the title to said property.

7.     To the rights of unknown or illegitimate heirs, or adopted children or children given or released in adoption to others.  This Certificate is made subject to matters not of record and to all matters of record or revealed by the record prior to the beginning date of this title search, to the rights of any person (s) in possession, and any materialmen's or mechanics' liens for improvements made on the land that would be further subject to any and all easements, grants, and rights-of-way for water lines, power lines, public roads, and private roads; for telephone, electric, or gas transmission lines; and for drainage purposes or any other public utilities.

8.     This Certificate is further subject to any lien in favor of the State of Mississippi and the statutory right of said state to seek recovery of Medicaid payments from the estate of a deceased Medicaid recipient who is over 55 years of age when the assistance was received.  A determination should be made that a deceased property owner, from and after July 1, 1994, never received any Medicaid benefits, or that the claim of the State of Mississippi has been properly waived pursuant to paragraph 2, Sec. 43-13-317 of the Mississippi Code of 1972, as amended.

9.    This Certificate offers no opinion as to any law, ordinance, or governmental regulation (including but not limited to building and zoning ordinances) restricting or regulating or prohibiting the occupancy, use or enjoyment of the land, or regulating the character, dimensions or location of any improvements now or hereafter erected on the land, or prohibiting a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part.

10.    This Certificate does not cover an examination of the Federal Tax Lien records filed and/or recorded in the District Office of the Internal Revenue Service in Jackson, Mississippi, nor does it cover any examination of any Bankruptcy records or the judgment rolls in the office of the Federal District Court of the Northern District of Mississippi.

11.    Any unauthorized duplications or reproductions of this opinion shall render this opinion void and relieve the undersigned from any and all liability hereunder. Subsequent reliance contrary hereto shall render this opinion void and relieve the undersigned of any liability hereunder.

12.    **This certificate has been prepared and furnished to NORTHEAST MISSISSIPPI PLANNING & DEVELOPMENT DISTRICT AND ITS CUSTOMER, PROFESSIONAL SERVICES OF POTTS CAMP, INC.** and at its special request, is limited to the purposes stated to the undersigned in requesting same, and is not extended to, or to be relied upon or utilized by, any other persons or entities under any other circumstances.

THEREFORE, it is my opinion that the absolute fee simple title in and to said property is vested unto: PROFESSIONAL SERVICES OF POTTS CAMP, INC., A Mississippi Corporation, in good standing in the State of Mississippi.

WITNESS MY SIGNATURE this the 2ND day of December, 2016, at 8 A.M. , in Holly Springs, Mississippi.

**JENNIFER L. SHACKELFORD**
**ATTORNEY AT LAW**

**COPY**

STATE OF MISSISSIPPI

COUNTY OF BENTON

## CERTIFICATE OF TITLE

I certify that on this day I have carefully examined the records of the Benton County

Courthouse for those instruments which are properly indexed and recorded in the offices of the

Chancery Clerk, Circuit Clerk and Tax Collector, in their respective indexes, to-wit: The Sectional

Land Index to Construction Liens, Federal Tax Lien Records, and applicable land tax records, all of

the preceding as reflected by the properly indexed indices of each of the records listed above and is

in no way intended to reflect the status of any unrecorded homestead rights, and the Judgment Roll,

as it reflects the names as listed in the Deed records of the above-described land, which are properly

indexed in the Sectional Land Index or Tract Book in the office of the Chancery Clerk of Benton

County, Mississippi, and is subject to the accuracy of computer hardware and software and electronic

retrieval of names as listed in the deeds vesting ownership in the captioned land at the time the

records were reviewed (a/k/a computer glitches), if applicable to this county,  and is not based on

the examination of the Direct and Reverse Index in the office of the Chancery Clerk. This Certificate

is limited to a period of Seven (7) years in reference to records regarding judgments and to a period

of three (3) years in regard to the City and/or County property taxes, which pertain to the title of the

property situated in Benton County, Mississippi, and more particularly described as:

**INDEXING:    34.8 ACRES, MORE OR LESS, IN THE NORTHWEST QUARTER OF
SECTION 3, TOWNSHIP 3 SOUTH, RANGE 1 EAST, BENTON COUNTY, MISSISSIPPI.**

**48.80 acres of land located in the Northwest Quarter of Section 3, Township 3 South,
Range 1 East, Benton County, Mississippi, and more particularly described as follows, to-wit:
COMMENCE at the Northeast corner of the Northwest Quarter of said Section 3; thence, run
South 20.0 feet to the South side of the Public Road for the POINT OF BEGINNING; from the**

POINT OF BEGINNING, run along a fence South 00 degrees 59 minutes West 462.6 feet; thence South 00 degrees 08 minutes West 779.3 feet; thence, leaving said road, run South 323.6 feet to a point, thence run South 47 degrees West 262.0 feet to an iron pin (set); thence run North 44 degrees 15 minutes West 360.0 feet to an iron pin (set); thence run South 47 degrees West 253 feet to a point on the North Right of Way line of Mississippi Highway #5 (50.0 feet from center line); thence along said Right of Way line run North 44 degrees 57 minutes West 1462.5 feet to a point (40.0 feet from center line); thence leaving said road, run North 45 degrees 08 minutes East 210.0 feet to a point; thence, run North 44 degrees 15 minutes West 210.0 feet to a point; thence run South 45 degrees 08 minutes West 210.0 feet to a point on the North Right of Way line of Mississippi Highway #5 (40.0 feet from center line); thence along said Right of Way line run North 44 degrees 15 minutes West 278.7 feet to a point; thence, leaving said road, run along the center line of a ditch: North 60 degrees 31 minutes East 226.7 feet; thence North 85 degrees 16 minutes East 188.8 feet; thence North 84 degrees 53 minutes East 123.5 feet; thence South 83 degrees 45 minutes East 148.3 feet; thence South 44 degrees 57 minutes East 194.2 feet; thence South 59 degrees 24 minutes East 84.2 feet; thence South 58 degrees 15 minutes East 67.5 feet; thence South 74 degrees 30 minutes East 90.0 feet; thence South 80 degrees 30 minutes East 100.0 feet; thence leaving said ditch, run North 24 degrees 30 minutes West 18.5 feet to an iron pin (set); from said point, run North 50 degrees 30 minutes West 153.0 feet to a point; thence run North 39 degrees 50 minutes West 100.0 feet to a point; thence run North 25 degrees West 100.0 feet to a point; thence run North 20 degrees West 145.0 feet to an iron pin (set) on the South side of the public road; thence along the South side of said road, run South 89 degrees 32 minutes East 1185.4 feet to the POINT OF BEGINNING.

All according to the plat of survey of John Michael Akins, Mississippi LS #2035, dated July 11, 1985.

SOURCE DEED: This being the same land and property conveyed to DIANE G. TAYLOR from Teresa Alberson Massengill by Executrix' Deed dated October 15, 1985 and recorded on October 18, 1985 in Land Deed Book 108 at pages 122-123 and by virtue of Warranty Deed from James D. Taylor, dated December 10, 2007, recorded in Land Deed Book 174, at page 274 (Instrument No. 2007001585), and by warranty deed from the Bank of Holly Springs as to a 2-acre tract previously conveyed and purchased by Diane G. Taylor, recorded in in the office of the Chancery Clerk of Benton County, Mississippi.

LESS & EXCEPT THE FOLLOWING ACREAGE PREVIOUSLY CONVEYED:

(A) Twelve acres (12) more or less, located in the Northwest Quarter of Section 3, Township 3 South, Range 1 East, Benton County, Mississippi (TRACT SOLD TO FARMERS GIN, INC.)

(B) 1.504 ACRES OF LAND LOCATED IN THE NORTHWEST QUARTER OF SECTION 3, TOWNSHIP 3 SOUTH, RANGE 1 EAST, BENTON COUNTY, MISSISSIPPI,

Paul & Rochelle Wilbanks property, Deed Book 138, Page 381 and Deed Book 140, Page 474. All according to survey of Shannon D. Tidwell, RLS No. 1711, dated July 21, 1999.

© 1.263 ACRES OF LAND LOCATED IN THE NORTHWEST QUARTER OF SECTION 3, TOWNSHIP 3 SOUTH, RANGE 1 EAST, BENTON COUNTY, MISSISSIPPI, (NOTE: This property was sold N. L. Jones Funeral Home as commercial lot)

Subject to: All easements and rights of way for public roads, utilities and highway easements and gas transmission lines which might cross said property.

THE AFOREMENTIONED PROPERTY IS:

1.    Subject to the payment of ad valorem taxes for the year 2016 which although not due and payable until 1 January 2017 still constitutes a lien. 2015 TAXES HAVE BEEN PAID on PPIN#.

2.    Subject to a Deed of Trust from Diane Taylor to William F. Schneller, Jr., Trustee–MERCHANTS & FARMERS BANK, Ashland, MS, Beneficiary, dated October 30, 2007, recorded in Trust Deed Book 199, Page 237,(Instrument No. 2007001432) on November 2, 2007, at 3:10 p.m., and re-recorded on December 28, 2007 at 8:20 a.m., in Trust Deed Book 200, page 86 (Instrument No. 20070016500) in the Office of the Chancery Clerk of Benton County, Mississippi, to secure a promissory note in the amount of $95,314.40, with interest and terms as provided therein.

3.    A Deed of Trust from Diane Taylor to William F. Schneller, Jr., Trustee–MERCHANTS & FARMERS BANK, Ashland, MS, Beneficiary, dated January 29, 2013, recorded in Trust Deed Book 223, page 705 (Instrument No. 201300111) on January 30, 2013, at 4:12 p.m. in the office of the Chancery Clerk of Benton County, Mississippi, to secure a promissory note in the amount of $74,159.97, with interest and terms as provided therein Renewal and extension of No. 2007001432 and re-recorded at No. 20070016500)

4.    A Deed of Trust from Diane Taylor to William F. Schneller, Jr., Trustee–MERCHANTS & FARMERS BANK, Ashland, MS, Beneficiary, dated March 4, 2016, recorded in Trust Deed Book

229, p. 750 (Instrument No. 201600233) on March 7, 2016 in the office of the Chancery Clerk of Benton County, Mississippi, to secure a promissory note in the amount of $64,709.00 with a maturity date of March 5, 2023, and is a Renewal and extension of No. 2007001432 re-recorded at No. 20070016500 and Instrument No. 201300111).

5.      Subject to any rights of way and easements for public roads and utilities, any other easements, any subdivision and zoning ordinances of the governmental authority having jurisdiction over the above described property, any applicable building restrictions, and any restrictive covenants of record.

6.      Subject to rights of parties in possession, deficiency in quantity of land, any contiguous property which might overlap the subject property, whether the same be through error of survey or description, boundary line disputes, roadways, including lack of access, unrecorded servitudes or easements, rights to possession of the whole or a part of said property perfected by adverse possession if any such right there may be, violations of wetlands regulations, or other matters which would be disclosed by an accurate survey or inspection of the property, any errors of recording or indexing made by the offices of the Chancery Clerk, Circuit Clerk and Tax Assessor and Collector of Benton County, Mississippi; and further subject to any instruments not appearing of record as of the applicable date of this opinion.

7.      Any prior reservation of conveyance, together with release of damages of minerals of every kind and character, including, but not limited to oil, gas, sand, and gravel, in, on, and under subject property.

8.      Subject to any environmental condition existing upon the subject property which would cause said property to be violation of any state and/or federal environmental protection laws. This

Certificate does not express an opinion as to any environmental condition which may be in violation of such laws and is subject to any such condition which may affect the title to said property.

9.     To the rights of unknown or illegitimate heirs, or adopted children or children given or released in adoption to others.  This Certificate is made subject to matters not of record and to all matters of record or revealed by the record prior to the beginning date of this title search, to the rights of any person (s) in possession, and any materialmen's or mechanics' liens for improvements made on the land that would be further subject to any and all easements, grants, and rights-of-way for water lines, power lines, public roads, and private roads; for telephone, electric, or gas transmission lines; and for drainage purposes or any other public utilities.

10.     This Certificate is further subject to any lien in favor of the State of Mississippi and the statutory right of said state to seek recovery of Medicaid payments from the estate of a deceased Medicaid recipient who is over 55 years of age when the assistance was received.  A determination should be made that a deceased property owner, from and after July 1, 1994, never received any Medicaid benefits, or that the claim of the State of Mississippi has been properly waived pursuant to paragraph 2, Sec. 43-13-317 of the Mississippi Code of 1972, as amended.

11.     This Certificate offers no opinion as to any law, ordinance, or governmental regulation (including but not limited to building and zoning ordinances) restricting or regulating or prohibiting the occupancy, use or enjoyment of the land, or regulating the character, dimensions or location of any improvements now or hereafter erected on the land, or prohibiting a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part.

12.     This Certificate does not cover an examination of the Federal Tax Lien records filed and/or recorded in the District Office of the Internal Revenue Service in Jackson, Mississippi, nor does it

cover any examination of any Bankruptcy records or the judgment rolls in the office of the Federal District Court of the Northern District of Mississippi.

13.     Any unauthorized duplications or reproductions of this opinion shall render this opinion void and relieve the undersigned from any and all liability hereunder. Subsequent reliance contrary hereto shall render this opinion void and relieve the undersigned of any liability hereunder.

14.     **This certificate has been prepared and furnished to NORTHEAST MISSISSIPPI PLANNING & DEVELOPMENT DISTRICT and its customer(s), DIANE G. TAYLOR,** and at its special request, is limited to the purposes stated to the undersigned in requesting same, and is not extended to, or to be relied upon or utilized by, any other persons or entities under any other circumstances.

THEREFORE, it is my opinion that the absolute fee simple title in and to said property is vested unto:   DIANE G. TAYLOR, A SINGLE PERSON.

WITNESS MY SIGNATURE this the 2ND day of December, 2016 at 8:00 a.m., in Ashland, Mississippi.

**JENNIFER L. SHACKELFORD**
**ATTORNEY AT LAW**

**COPY**

STATE OF MISSISSIPPI

COUNTY OF MARSHALL/BENTON

### FINAL CERTIFICATE OF TITLE

I certify that on this day I have carefully examined the records of the Benton/Marshall County Courthouse for those instruments which are properly indexed and recorded in the offices of the Chancery Clerk, Circuit Clerk and Tax Collector, in their respective indexes, records searched back 35 years to-wit: The Sectional Land Index to Construction Liens, Federal Tax Lien Records, and applicable land tax records, all of the preceding as reflected by the properly indexed indices of each of the records listed above and is in no way intended to reflect the status of any unrecorded homestead rights, and the Judgment Roll, as it reflects the names as listed in the Deed records of the above-described land, which are properly indexed in the Sectional Land Index or Tract Book in the office of the Chancery Clerk of Benton/Marshall County, Mississippi, and is subject to the accuracy of computer hardware and software and electronic retrieval of names as listed in the deeds vesting ownership in the captioned land at the time the records were reviewed (a/k/a computer glitches), if applicable to this county, and is not based on the examination of the Direct and Reverse Index in the office of the Chancery Clerk. This Certificate is limited to a period of Seven (7) years in reference to records regarding judgments and to a period of three (3) years in regard to the City and/or County property taxes, which pertain to the title of the property situated in Benton/Marshall County, Mississippi, and more particularly described as:

**TRACT 1 - MARSHALL COUNTY, MISSISSIPPI**
**INDEXING:**          **A 0.748 ACRE TRACT OF LAND IN THE NORTHEAST QUARTER
AND SOUTHEAST QUARTER OF THE NORTHWEST QUARTER
OF SECTION 16, TOWNSHIP 5 SOUTH, RANGE 1 WEST, POTTS
CAMP, MARSHALL COUNTY, MISSISSIPPI, and being more**

particularly described as follows:

Commence at a "t" post found at a sand rock, being the Northwest Corner of Section 16, Township 5 South, Range 1 West; thence East 1878.74 feet; thence South 1273.73 feet to a ½" re-bar set on the West right of way of Mississippi Highway 178 and the North right of way of Homan Road, said point being the POINT OF BEGINNING; thence South 67 degrees 54 minutes 49 seconds West 247.67 feet, along the North right of way of Homan Road to a ½" re-bar set; thence South 85 degrees 11 minutes 15 seconds West 8.61 feet, along said right of way to a ½" re-bar set; thence North 23 degrees 02 minutes 00 seconds West 124.38 feet to a ½" re-bar set; thence North 67 degrees 55 minutes 47 seconds East 257.98 feet to a ½" re-bar set on the West right of way of Mississippi Highway 178; thence South 22 degrees 04 minutes 15 seconds East 126.85 feet along said right of way to the POINT OF BEGINNING.

Said Tract containing 0.748 acres, more or less (32,588).

All according to survey of Don Hollingsworth Surveying, LS #2525, dated December 22, 2003.

TOGETHER WITH ALL BUILDINGS, HEREDITAMENTS AND APPURTENANCES THEREUNTO BELONGING.


TRACT 2 - BENTON COUNTY, MISSISSIPPI
INDEXING:   A LOT IN BLOCK NO. 14 OF THE TOWN OF ASHLAND, MISSISSIPPI, described as:

BEGINNING at a stake 144 feet North of the Southeast Corner of the lots owned by Henry J. Taylor and wife, Mattie R. Taylor, which is the POINT OF BEGINNING of this description; thence running West along the North line of the Henry J. Taylor property a distance of 114 feet to a set stake; thence running North a distance of 74 feet to a set stake which is the Southwest Corner of the lot owned by J. T. Purcell; thence running East along the South line of the J.T. Purcell property a distance of 114 feet to a set stake; thence running South along the west boundary of Walnut Street a distance of 74 feet to the POINT OF BEGINNING.

TOGETHER WITH ALL BUILDINGS, HEREDITAMENTS AND APPURTENANCES THEREUNTO BELONGING.

TRACT 3 - BENTON COUNTY, MISSISSIPPI
INDEXING:   34.8 ACRES, MORE OR LESS, IN THE NORTHWEST QUARTER OF SECTION 3, TOWNSHIP 3 SOUTH, RANGE 1 EAST, BENTON COUNTY, MISSISSIPPI.

48.80 acres of land located in the Northwest Quarter of Section 3, Township 3 South, Range 1 East, Benton County, Mississippi, and more particularly described as follows, to-wit: COMMENCE at the Northeast corner of the Northwest Quarter of said Section 3; thence, run South 20.0 feet to the South side of the Public Road for the POINT OF BEGINNING; from the POINT OF BEGINNING, run along a fence South 00 degrees 59 minutes West 462.6 feet;

thence South 00 degrees 08 minutes West 779.3 feet; thence, leaving said fence, run South 323.6 feet to a point, thence run South 47 degrees West 262.0 feet to an iron pin (set); thence run North 44 degrees 15 minutes West 360.0 feet to an iron pin (set); thence run South 47 degrees West 253 feet to a point on the North Right of Way line of Mississippi Highway #5 (50.0 feet from center line); thence along said Right of Way line run North 44 degrees 57 minutes West 1462.5 feet to a point (40.0 feet from center line); thence leaving said road, run North 45 degrees 08 minutes East 210.0 feet to a point; thence, run North 44 degrees 15 minutes West 210.0 feet to a point; thence run South 45 degrees 08 minutes West 210.0 feet to a point on the North Right of Way line of Mississippi Highway #5 (40.0 feet from center line); thence along said Right of Way line run North 44 degrees 15 minutes West 278.7 feet to a point; thence, leaving said road, run along the center line of a ditch: North 60 degrees 31 minutes East 226.7 feet; thence North 85 degrees 16 minutes East 188.8 feet; thence North 84 degrees 53 minutes East 123.5 feet; thence South 83 degrees 45 minutes East 148.3 feet; thence South 44 degrees 57 minutes East 194.2 feet; thence South 59 degrees 24 minutes East 84.2 feet; thence South 58 degrees 15 minutes East 67.5 feet; thence South 74 degrees 30 minutes East 90.0 feet; thence South 80 degrees 30 minutes East 100.0 feet; thence leaving said ditch, run North 24 degrees 30 minutes West 18.5 feet to an iron pin (set); from said point, run North 50 degrees 30 minutes West 153.0 feet to a point; thence run North 39 degrees 50 minutes West 100.0 feet to a point; thence run North 25 degrees West 100.0 feet to a point; thence run North 20 degrees West 145.0 feet to an iron pin (set) on the South side of the public road; thence along the South side of said road, run South 89 degrees 32 minutes East 1185.4 feet to the POINT OF BEGINNING.

LESS & EXCEPT THE FOLLOWING ACREAGE PREVIOUSLY CONVEYED:

(A) Twelve acres (12) more or less, located in the Northwest Quarter of Section 3, Township 3 South, Range 1 East, Benton County, Mississippi

(B) 1.504 ACRES OF LAND LOCATED IN THE NORTHWEST QUARTER OF SECTION 3, TOWNSHIP 3 SOUTH, RANGE 1 EAST, BENTON COUNTY, MISSISSIPPI.

© 1.263 ACRES OF LAND LOCATED IN THE NORTHWEST QUARTER OF SECTION 3, TOWNSHIP 3 SOUTH, RANGE 1 EAST, BENTON COUNTY, MISSISSIPPI, (NOTE: This property was sold N. L. Jones Funeral Home as commercial lot)

(D) 2.0 acres, more or less, in the Northwest Quarter of Section 3, Township 3 South, Range 1 East, Benton County, Mississippi.

Subject to: All easements and rights of way for public roads, utilities and highway easements and gas transmission lines which might cross said property.

THE AFOREMENTIONED PROPERTY IS:

1.      Subject to the payment of ad valorem taxes for the year 2017 which although not due and payable until 1 January 2018 still constitutes a lien. 20161 Taxes have been paid .

2.      Subject to a first Deed of Trust dated December 12, 2016, as to Tract 1 and 3 and a second as to Tract 2 executed by Professional Services of Potts Camp, Inc. And Diane G. Taylor to Fred C. Permenter, Jr., Trustee for the benefit of NORTHEAST MISSISSIPPI PLANNING & DEVELOPMENT DISTRICT, Beneficiary, to secure a first promissory note executed by Professional Services of Potts Camp, Inc .in the amount of $162,500.00 with interest and terms as provided therein, recorded as Instrument No. 2016004770 filed December 20, 2016, at 1:59 p.m. in Marshall County, Mississippi and on December 29, 2017 in Benton County, Mississippi as Instrument No. 201601290 filed at 8:33 a.m;

and

       Subject to a Second Deed of Trust dated December 12, 2016, as to Tract 1 and 3 and a third as to Tract 2 executed by Professional Services of Potts Camp, Inc. And Diane G. Taylor to Fred C. Permenter, Jr., Trustee for the benefit of NORTHEAST MISSISSIPPI PLANNING & DEVELOPMENT DISTRICT, Beneficiary, to secure a second  promissory note executed by Professional Services of Potts Camp, Inc. a Mississippi Corporation in the amount of $162,500.00 with interest and terms as provided therein, recorded as Instrument No. 2016004471 filed December 16, 2016 at 2 p.m. in Marshall County, Mississippi, and filed in Benton County, Mississippi as Instrument No. 201601291 at 9:37 p.m.

3.      Subject to any rights of way and easements for public roads and utilities, any other easements, any subdivision and zoning ordinances of the governmental authority having jurisdiction over the above described property, any applicable building restrictions, and any restrictive covenants

\\professional\Data\POTTS_CAMP\CORPS\PROFESSIONAL SERVICES OF PC FINAL CT 02232017.wpd

of record.

4.   Subject to all prior reservations in my original Certificate of Title

5.   Any unauthorized duplications or reproductions of this opinion shall render this opinion void and relieve the undersigned from any and all liability hereunder. Subsequent reliance contrary hereto shall render this opinion void and relieve the undersigned of any liability hereunder.

6.   **This certificate has been prepared and furnished to NORTHEAST MISSISSIPPI PLANNING & DEVELOPMENT DISTRICT,** and its customer(s) **PROFESSIONAL SERVICES OF POTTS CAMP, INC., A MISSISSIPPI CORPORATION** and at its special request, is limited to the purposes stated to the undersigned in requesting same, and is not extended to, or to be relied upon or utilized by, any other persons or entities under any other circumstances.

THEREFORE, it is my opinion that the absolute fee simple title in and to said property is vested unto: Tract 1 is vested in Professional Services of Potts Camp, Inc. Tract 2 is vested in Diane G. Taylor with life estate vested in Terry E. Hoover and Tract 3 is vested in Diane G. Taylor.

WITNESS MY SIGNATURE this the 31st day of January, 2017 at 8:00 a.m., in Holly Springs, Mississippi and Ashland, Mississippi..

JENNIFER L. SHACKELFORD
ATTORNEY AT LAW